**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

**NOT FOR PUBLICATION**

FILED
JAMES J. WALDRON, CLERK
July 13, 2006
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

July 13, 2006

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Ben Becker, Esq.
Becker Meisel LLC
Eisenhower Plaza II
354 Eisenhower Parkway
Suite 2800
Livingston, New Jersey 07039
***Counsel to K.W. Griffen Company***

David Wolff, Esq.
396 Route 34
Matawan, New Jersey 07747
***Chapter 7 Trustee***

        Re:    *In re Alfred Caggia*
                Case No. 05-21062 (DHS)

Dear Counsel:

      Before the Court is a motion filed by David Wolff, the Chapter 7 Trustee for the Debtor, Alfred Caggia, seeking an order "for relief in aid of May 15, 2006 sale order." Also before the Court is a cross-motion filed by K.W. Griffen Company (hereinafter "K.W.") for an order "(i) confirming title to equipment and setting time for removal of equipment and (ii) approving placement of funds into escrow pending determination of reasonable use and occupancy and for related relief." For the reasons that follow, the Trustee's motion is hereby denied and the cross-motion filed by K.W. is hereby granted.

Page 2
July 13, 2006

## I. Procedural History and Statement of Facts

On April 6, 2005, the Debtor filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the District of New Jersey. The Debtor operated as a debtor-in-possession between April 6, 2005 and December 15, 2005, when the Court entered an Order directing the appointment of a Chapter 11 trustee. Thereafter, the Office of the United States Trustee appointed David Wolff as the Chapter 11 Trustee for the Debtor. On January 4, 2006, at the request of the Trustee, the Court entered an Order converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. The Office of the United States Trustee appointed David Wolff as the Chapter 7 Trustee for the Debtor.

Prior to the petition date, the Debtor purchased real property located at 1255 Commerce Boulevard South, Sarasota, Florida, and a vacant contiguous lot known as 7450 Commerce Place, Sarasota, Florida (hereinafter collectively the "Property"). On March 23, 2006, the Trustee filed a motion with the Court seeking to sell the Property to David Seng for the sum of $550,000. On May 15, 2006, the Court entered an Order approving the sale of the Property to Seng for the sum of $550,000 (hereinafter the "Sale Order"). According to the Trustee, "[t]here projects to be approximately $55,000 of equity from the . . . Property to be distributed to the estate in accordance with the Bankruptcy Code after satisfaction of the existing liens and costs associated with the closing."

Shortly after the Trustee's appointment, the Debtor advised the Trustee that in June of 2005, the Debtor entered into a five-year lease with respect to a portion of the Property to a company known as N. Bisulca Ltd., Inc. (hereinafter "Bisulca") (*See Certification of Jeffrey M. Sponder in Support of Motion of David Wolff, Trustee for Relief in Aid of May 15, 2006 Sale Order*, ¶ 2) (hereinafter "*Sponder Cert.*"). According to the Certification of Jeffrey M. Sponder in support of the Trustee's motion, the Debtor testified at his Rule 2004 examination that Bisulca only paid one-and-a-half months of rent to the Debtor.[1] The certification of Jeffrey Sponder further states as follows:

> The Debtor further testified at his Rule 2004 examination that prior to entering into the [lease agreement with Bisulca], Bisulca purchased personal property . . . from [Ocumed, Inc.] an entity owned and controlled by the Debtor at an auction sale conducted by one of the Debtor's lenders. The Debtor later produced a copy of an auctioneer's invoice . . . reflecting the sale of the [p]ersonal [p]roperty from . . . [Ocumed, Inc.] . . . .
>
> [(*Sponder Cert.*, ¶ 4)].

The personal property is located on the Property which is the subject of the May 15, 2006 Sale Order.

---

[1] The rent is $3,500 per month.

Page 3
July 13, 2006

The auctioneer's invoice, which is dated July 28, 2004, contains a notation that reads as follows: "[a]ll purchases must be removed no later than July 29, 2004." (*See Sponder Cert.*, Exhibit "B"). Nonetheless, the Trustee submits that to this day Bisulca has failed to remove the personal property.

According to the certification of Jeffrey Sponder,[2] on December 19, 2005, January 20, 2006, and April 14, 2006, he "wrote letters to Bisulca requesting Bisulca pay its rent to the Trustee for the use of the ... [P]roperty." (*Sponder Cert.*, ¶ 6). Bisulca apparently never responded to these letters. (*Sponder Cert.*, ¶ 6). Moreover, between January and April of 2006, Sponder left "numerous" phone messages for Bisulca, "none of which were returned." (*Sponder Cert.*, ¶ 7). Several days after the Court entered the Sale Order, counsel for the Trustee sent a letter to Bisulca, which provided in pertinent part as follows:

> This letter shall confirm our conversation of yesterday wherein I advised you that the real property located at 1255 Commerce Place South, Sarasota, Florida (the "Property") is under contract to be sold, the Bankruptcy Court approved the sale on May 9, 2006 and the closing is expected to occur <u>immediately</u>.
>
> We understand that ... [Bisulca] may have an interest in certain personal property still located at the Property. If [Bisulca] wishes to retain the personal property, it must pay the back rent for the use of the property, which is $17,500 ($3,500 a month from January 2006). If we do not hear from you <u>immediately</u>, the Trustee or purchaser will dispose of the personal property without further notice.
>
> [(*Sponder Cert.* Exhibit D) (emphasis in original)].

On May 25, 2006, the Trustee received a telephone call from John Ciancio, who advised the Trustee that he was calling on behalf of K.W. "and alleging that K.W. had allegedly purchased the Personal Property located at the Florida Property from Bisulca." (*Sponder Cert.*, ¶ 9). The next day, counsel for the Trustee "wrote a letter to Ciancio requesting a copy of a bill of sale, advising of the pending closing of the sale of the ... [Property] and requesting that K.W., as the purported purchaser of the Personal Property, pay all back rent owed by Bisulca." (*Sponder Cert.*, ¶ 10). Counsel for K.W. responded by letter dated May 30, 2006, and forwarded an October 27, 2005 bill of sale from Bisulca to K.W., reflecting that K.W. had allegedly purchased the personal property from Bisulca. (*Sponder Cert.*, ¶ 11).

By letter dated June 1, 2006, counsel for the Trustee responded to the letter from K.W.'s counsel, and stated the following:

---

[2] Sponder is co-counsel for the Trustee.

Page 4
July 13, 2006

> [I]t is nevertheless our position that Bisulca had no rights in the equipment as a result of its failure to remove the equipment from the Property by July 29, 2004, nearly two years ago. In any event, Bisulca's failure to remove the equipment for nearly two years constitutes an abandonment. As a result, your client has no rights to the equipment but instead may have a claim against Bisulca.
>
> As I previously advised you, the Trustee would nevertheless be willing to release the equipment to your client if your client agreed to pay back rent and storage charges since July 2004 in full. As is reflected in the attached lease, Bisulca owes the estate back rent of approximately $30,000 (July 2005 through May 2006). Additionally, either Bisulca or your client is responsible for approximately 10-11 months of additional storage costs (August 2004 - June 2005), which is approximately an additional $30,000, for a total of $60,000 of back rent and storage charges.
>
> Unless your client is willing to pay the Trustee the sum of $60,000 immediately, the Trustee is not willing to allow your client to remove the equipment.
>
> [(*Sponder Cert.*, Exhibit H)].

While the facts are not in dispute, K.W. offers a different "interpretation" of the facts. According to the certification of James Brown, President of K.W., UPS Capital Business Credit, a secured lender to Ocumed, Inc., conducted a publicly noticed auction sale under Article 9 of the Uniform Commercial Code with respect to the personal property. (*See Certification of James Brown*, ¶ 6) (hereinafter "*Brown Cert.*"). Based upon Bisulca's purchase of the personal property at the auction, Brown submits that Bisulca "acquired title from a third party, arms-length lender conducting a foreclosure type sale." (*Brown Cert.*, ¶ 8).[3] Several months after Bisulca's purchase of the personal property, an agent for Bisulca contacted Brown to learn if Brown would be interested in purchasing certain equipment from Bisulca. (*Brown Cert.*, ¶ 14). After negotiations ensued, Bisulca and K.W. eventually agreed to make an even trade for equipment owned by K.W. for the equipment sought to be sold by Bisulca. In addition, K.W. paid an additional $1,000 to Bisulca as consideration. (*Brown Cert.*, ¶ 18). Brown specifically contends that the equipment K.W. acquired in trade with Bisulca "is that which Bisulca had purchased at the Florida auction in 2004. The equipment has never been moved from the Florida Property." (*Brown Cert.*, ¶ 19).

According to Brown, in late May of 2006 the agent for Bisulca "advised [Brown] that he had

---

[3]Bisulca purchased the personal property for the sum of $71,500.

Page 5
July 13, 2006

just learned that the Florida Property where K.W.'s Equipment was had been sold by a bankruptcy trustee and that the Equipment would now have to be removed from the Florida Property." (*Brown Cert.*, ¶ 21). Brown was not aware apparently until May of 2006 of the lease agreement Bisulca had made with the Debtor to keep the personal property at the site. (*Brown Cert.*, ¶ 22).

With respect to the Trustee's demands made to K.W., Brown certifies as follows:

> The Trustee has apparently long been aware that the Debtor did not own the Equipment located at the Florida Property and therefore that it was not his to sell. K.W., however, first learned on or about May 19, 2006 that a closing of the sale of the Florida Property was pending.
>
> [F]rom our very first conversations with the Trustee . . . beginning in late May 2006, the Trustee never questioned K.W.'s ownership of the Equipment after he was provided with the Bill of Sale [between Bisulca and K.W.] . . . until he brought this Motion. At all previous times, the Trustee contended only that the Debtor's real property was the subject of the sale approved by the Bankruptcy Court.
>
> The Trustee had some "notice," either prior to or while the motion to sell the Florida Property was pending, that the Equipment at the Florida Property had been sold to Bisulca prior to Mr. Caggia's bankruptcy filing or that Bisulca may have had information about the ownership of the Equipment. When K.W. contacted the Trustee on May 26 to see about a reasonable schedule to remove the Equipment, the Trustee expressed no doubt about K.W.'s ownership of the Equipment. For some unexplained reason, the Trustee did a turnabout in a conversation with our attorney and now contends in the motion papers that the Equipment was abandoned.
>
> [T]he Trustee acknowledges that he knew of Bisulca's interest in the Florida Property at least as early as December 2005 when he first wrote to Bisulca demanding payment of rent for the Florida Property. Despite this, . . . the Trustee has not filed suit or taken any other action to collect the amount he claims is due for rent from Bisulca. Instead, the Trustee now demands that K.W., a stranger to this Chapter 7 case until two weeks ago, pay the estate back rent that the Trustee claims is due.

[(*Brown Cert.*, ¶¶ 27, 30, 31, and 32)].

It is against this background that the Court will turn to its legal conclusions.

Page 6
July 13, 2006

### II. Discussion

In this motion, the Trustee "seeks the entry of an order determining that Bisulca and/or K.W. do not have an interest in the Personal Property and/or directing Bisulca and K.W. to pay all back rent and/or storage costs since July 2004, which the Trustee submits totals at least $60,000."

The outcome with respect to the Trustee's motion is evident based upon its fundamental deficiencies. The Trustee failed to include a memorandum of law with his moving papers. Local Bankruptcy Rule 9013-2 specifically provides as follows: "*All* moving papers, answering papers, and cross-motions *shall* include a brief, or a statement that no brief is necessary and the reasons therefor." *See* D.N.J. LBR 9013-2 (emphasis added).

Without any legal support from the Trustee to support his position, the Court cannot possibly grant the relief he requests for the following reasons. First, and as K.W. correctly notes, the Trustee has failed to present any legal argument that the foreclosure sale of the personal property from the secured lender of Ocumed, Inc. to Bisulca is somehow void or voidable. Second, other than self-serving conclusory statements, the Trustee has failed to present any legal argument that Bisulca abandoned the personal property as a matter of Florida law based upon its failure to remove the equipment as contemplated by a receipt from an auction sale. Third, the Trustee has further failed to present any legal argument that K.W. can be found to have abandoned the personal property as a matter of Florida state law after purchasing the equipment from Bisulca through an apparent arms-length transaction. Fourth, the Trustee has failed to present any legal authority for the proposition that Bisulca's obligation, but failure, to pay rent in accordance with an agreement with the Debtor can somehow be imputed to K.W., a party not privy to the original contract. Fifth, the Trustee fails to address whether he has abided applicable Florida state statutes governing the procedural requirements a landlord must take prior to disposing of personal property left on the premises. Sixth, the Trustee has failed to produce any evidence, other than his conclusory, self-serving statement, that either Bisulca or K.W., or both, abandoned the personal property as a matter of fact.

Simply put, to constitute an "abandonment," there must be found an intent to abandon, and while intent may be inferred when the facts are shown, there still must be adequate facts to support such a finding. *Baglin v. Cusenier Co.*, 221 U.S. 580, 597-98, 31 S. Ct. 669, 674, 55 L. Ed. 863 (1911). *See also Davis v. Suggs*, 460 N.E.2d 665, 668 (Ohio Ct. App. 1983) ("Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon"); *State v. Schultz*, 388 So.2d 1326, 1329 (Fla. Dist. Ct. App. 1980) ("The abandonment of personal property is the intention to part with the property forever"). Further, the burden is on the party asserting an abandonment to prove its occurrence. *Brown v. Reynolds*, 872 So.2d 290, 295 (Fla. Dist. Ct. App. 2004). Here, the Trustee has failed to satisfy his burden of demonstrating an *intent* on the part of either Bisulca or K.W. to abandon the personal property. For these reasons, the Trustee's motion must be denied.

Document      Page 7 of 7

Page 7
July 13, 2006

Turning to the cross-motion filed by K.W., and largely based upon the foregoing, the Trustee has also failed to demonstrate that the transactions between Ocumed, Inc., UPS Capital Business Credit, Bisulca, and ultimately K.W. were anything other than a series of arms-length transactions. Based upon the record before the Court, including the certification of James Brown, K.W. has adequately demonstrated its ownership and title to the personal property. Consequently, this portion of the cross-motion shall be granted.

Two issues, however, remain. First, that aspect of the cross-motion requesting the Court to set a deadline for the removal of the equipment by K.W. And second, whether K.W. is obligated to pay any use and occupancy charges to the Debtor. On this second issue, K.W. acknowledges that it is willing "to place the sum of $17,500 in escrow with either co-counsel to the Trustee or [its own counsel] pending a negotiated resolution of use and occupancy, or a determination by this Court of reasonable use and occupancy, if any."

K.W. is hereby directed to remove the equipment within fourteen (14) days of the entry of this Opinion and accompanying Order of the Court. Finally, based upon the previous demand for rent by the Trustee and K.W.'s willingness to deposit $17,500 in escrow, the Court will find this sum to be a reasonable use and occupancy charge and direct that it be paid to the Trustee.

An accompanying Order has been entered by the Court in accordance with this Opinion.

Very truly yours,

/s/ DONALD H. STECKROTH